And we'll turn to the third case on our calendar this morning, United States v. Edwin Hernandez. Mr. Singer, go ahead. May it please the Court, good morning, Your Honors. My name is Murray Singer. I represent Edwin Hernandez. Strategically and factually, this was an all-or-nothing case. Mr. Hernandez and another person with whom he was acting in concert approached three victims standing in a driveway and opened fire, hitting two of the men. If Mr. Hernandez's claim that he was acting under duress was supported and found by the jury, he'd be not guilty of all six of the charges that were submitted. And likewise, if the duress defense was rejected by the jury, he rationally would have been convicted of all six of the charges. And if a frog had wings, it would fly? Yes. I don't understand. What's the argument you're making? Judge, the— These are all hypothetical. If—a lot of ifs there. It's an all-or-nothing situation, and— What does that mean? It means that all six charges, the verdict on all six charges, rationally and logically would be the same. One way or another, the fact that— The duress defense applied in the way you argued it to all of the charges. Oh, yes. The duress defense was raised and argued as to all of the charges. Applied equally to all of the charges. Yes. Yes, because there was a single act by Mr. Hernandez. He was convicted of two of the charges. Of two of the charges. Why doesn't that logically mean that the jury rejected the duress defense? It may be that the jury did reject the duress defense and found insufficient proof, which was on the other charges, which is what was argued by— which is what's argued by the government. It may also be, though, that the jury compromised. The fact, as we—as we submit and was argued— On what? On the duress defense? On the—in reaching its verdict, acquitting Mr. Hernandez of four of the charges and convicting him of the last two. But they could compromise—they could all agree in their rejection of the duress defense but compromise for some other reason. There are many possibilities, Judge. The fact is we don't know. That's the bottom line in terms of the second argument that I've raised in my brief relating to the use of the acquitted conduct for the guideline analysis and for sentencing purposes. The verdict we submit was irrational and inexplicable given the nature—the factual situation in this case. It's—the verdict was inexplicable. Was the government's evidence identical with respect to each of the two victims? Yes. Really? Yes, it was. There were— One of them was shot before the other. That is—that is not my reading of the record, Your Honor. I don't believe that is accurate. Each one of the victims indicated in their testimony that they saw the two guns being fired simultaneously, that they saw the flash from each gun and that immediately each one testified that they felt something, meaning that they were hit by a bullet. That's the testimony of the two victims as well as the testimony of the third victim who was not hit by any shot. All three testified that two men approached, both had guns drawn and that they opened fire, that they shot simultaneously. There was no indication of one firing first. There's no indication in the testimony of either victim that one of them was hit first or one of them wasn't hit immediately upon the firing of the shots. I know that's an argument that the government has made, but if you look at the testimony of the victims themselves, it simply is not supported by the record. So there's two men acting in concert who opened fire, and my formulation that I'm making to you today, which I believe is supported by the record that this was presented by both sides as an all-or-nothing matter, indicates that it certainly highlights the importance of the duress instruction that's given to the jury, but also our concern as to the likelihood that this was an inconsistent verdict. Actually, I won't get into likelihoods, because in my view that doesn't matter. The fact is because there was no special verdict, nothing asked of the jurors to indicate what the basis was for their verdict, it is possible that the jury found the duress defense and compromised. The whole nature of a compromised verdict, which has been accepted by this court, by the Supreme Court, is that it is inconsistent, that it's irrational, that it may be the result of not following the specific law that was given in the case, and yet the courts have recognized that they are permissible, that a jury is permitted to act in that way. But if the jury determined that Williams was shot first, then that would explain the verdict, correct? It's a possibility, certainly. I'm just saying if that's what they agreed on, then that would explain the verdict. But none of us here can say that. I'm not asking for a transcript of what the jury thought. I'm asking you, if the jury agreed that Mr. Williams was shot first and that was their unanimous view of the evidence, would that explain this verdict? No, not entirely. Explain to me what it would not explain. It would not explain the acquittal of the attempted murder count. I mean, these were point-blank shots. Two men approached someone else and pointed a gun right at him and opened fire. There was no argument made by either side going to a difference in intent, one versus another. It certainly, the question that you pose, Your Honor, certainly could or would explain Mr. Williams versus Mr. Faber, the other victim. But again, we can't know that. My argument to the court, while we recognize that acquitted conduct may be used as relevant conduct for purposes of sentencing, the law on that is clear. The point that we raise is that when or if an affirmative defense has been established, which is also a possibility in this case, given this verdict, that if that is the case, that to use that acquitted conduct would be completely opposite of what the jury found because the affirmative defense has to be established. It would be contrary to a possibility, but it wouldn't be contrary to anything that we know for sure. We don't know anything for sure on the basis for the jury's verdict. We don't know anything at all. That's why this matter is left hanging out there. It is a reasonable and rational conclusion to argue that the jury found duress by a preponderance of the evidence and yet compromised, that that is also one of the possibilities that is out there that a jury may have found and that is not refuted by any specific verdict asked of the jurors. Since that is a possibility, how can a sentencing court then use information that may have been found by a preponderance of the evidence and rule the other way? That's where our concern is with the sentencing, the guideline analysis and the sentencing by the lower court. If I may address briefly the issue raised in point one as to the charge itself, it's our view that the trial court added an element to the charge on duress that is not supported by many years of case law by this court, and the factual basis that the court was relying on is simply not supported by the facts of this case. The court was attempting to indicate that posing possibilities, if the defendant had knowingly gotten in this gang, he would know that certain things were going to happen, and yet that is not the testimony of the cooperating witnesses in this case. That was not . . . and certainly not supported by the record. The factual basis for the judge's determination that this additional element was needed, we submit was not supported by the factual record, and that adding this particular element, the recklessly putting himself in a position where duress would be likely, is not supported by the underpinnings, the common law underpinnings, and the legal underpinnings as recognized by the courts of this particular defense. Thank you. If there's no further questions, thank you very much. Thank you. Ms. Farrell. May it please the Court. Megan Farrell, Assistant United States Attorney from the Eastern District of New York, on behalf of the government. Your Honors, this Court should decline to vacate the defendant's convictions because the duress jury charge that was given was an accurate statement of law, and should also decline to vacate the appellant's sentence because the district court properly considered the evidence before it regarding the acquitted conduct. Taking those points in reverse order, as opposing counsel did, the sentence here, the district judge here properly considered acquitted conduct for the sentence here. Primarily this . . . Before we go there, why don't you address the substantive arguments made by Mr. Singh, before we reach the sentencing. What do you make of the argument that the jury had necessarily rejected the duress defense when it convicted Mr. Hernandez of the assault and gun counts? That I take to be the principal argument being pressed by Mr. Singer, and the argument about the compromise which is implicit in all of this. Your Honor, it's our position that the compromise is not implicit in all this. Instead, when, as the district judge reviewed the record and the evidence that was offered, it was really irrational to be the case that the jury did not reject the duress defense. Here, the jury convicted the defendant of assaulting Curtis Williams . . . But not attempted murder. But not attempted murder, correct. Explain that. So, the attempted murder and the assault arise out of the same transaction, Your Honor. And here, the jury convicted us of the assault, but not the attempted murder. And the only difference between those two crimes are the state of mind and the defendant. And contrary to the argument that the appellant has made, there was indeed testimony in the record regarding the defendant's state of mind because he himself testified that he did not intentionally aim at the people, that he was aiming at the property because he did not want to hurt anyone. And so, the fact that the jury acquitted on the first count is instead consistent with the fact that the jury perhaps credited . . . The distinction in terms of the requisite intent. Correct, Your Honor. And so, the fact that the jury acquitted on the first account, but not with the second . . . is consistent with the fact that it found that the government did not prove beyond a reasonable doubt, the first count. And that is a rational interpretation of the jury's conclusion. Unlike the interpretation that the appellant is offering now. And, what underscores that point is the fact that the district judge here . . . gave an incredibly detailed and careful instruction regarding the verdict sheet. And, it explained to the jury that they were only supposed to consider duress if they found that the defendant was guilty on all counts. And so, given the evidence as it was presented, the instruction that was given . . . On all counts or on any count? On each count. The district court was . . . I have the instruction here. It was specific that it was on each count they should look at whether or not the defendant was guilty. And so, the jurors were given an opportunity to consider that question. Additionally, the cases that are cited by the defendant in support of the notion that the sentencing enhancement was improper . . . are really irrelevant in this case. And, in terms of . . . Finally, in terms of the duress defense, the appellant also argued with respect to Your Honor's question . . . about whether or not there was evidence that Curtis Williams . . . Whether the evidence was different between the two victims. Although, as the appellant stated, it was not different with respect to the victim's testimony.  Because, the defendant himself admitted that he shot first. And, the defendant also made this admission in his post-arrest interview. And so, as previously suggested by the court, the verdict is consistent with the notion that the . . . that the victim, Curtis Williams, was shot first. And, that perhaps the reason why there was a full acquittal with respect to the second victim, Mr. Haber . . . is because the jury found that the defendant shot Curtis Williams. If there are no further questions on this particular point, I'll move on to the second point addressed by defense counsel. What about Mr. Singer's concern about the verdict form? I guess it was the verdict form that concerned him. That it wasn't particularly or sufficiently detailed. You heard his argument about the verdict? Yes. Your Honor, to the extent that it wasn't sufficiently detailed, which the government would not concede . . . it was certainly made up for by the district court's instruction, which was . . . which was very detailed and very clear in response to the jury's question about . . . about how it should consider the duress defense. And so, it more than made up for any argument that the verdict sheet was not clear. Was there any request by the defendants to have a verdict form that . . . on which the jury would specify the basis on which it reached a not guilty verdict? No, Your Honor. Neither side requested a special verdict. And . . . What we have here, basically, is a general verdict with respect to each count. Yes, Your Honor. Because the verdict form itself is quite detailed in a sense. It's four pages. So, there was no objection to follow up on Judge Kearse's inquiry? There was no objection to the verdict form? Correct. And, they didn't ask for a special verdict form? And, they didn't ask for a special verdict form. Anything else? Just briefly, Your Honors. With respect to the jury charge that was given, it's the government's position that it is entirely consistent with the law of this circuit. The cases that the government cites, United States v. Zagard and United States v. Paul, are still good law. And, the jury instruction that was given is articulated very clearly in those cases. Being that when a defendant has recklessly or negligently placed himself in a situation in which it's probable that he would be subject to duress, the defense is not available. And, those cases have not been abrogated by this court. And, in fact, the cases that are cited by the appellant in support of this argument are cases where the defendant did not receive a duress charge at all because the court found that there was a reasonable opportunity to escape. And, here, the district court actually noted that it was conceivable that the defendant had not even offered enough evidence to merit a jury charge, but nonetheless gave that charge out of an abundance of caution. And so, the defendant here can hardly argue that he was prejudiced by the fact that the charge was given in a way that was fully consistent with the law of this circuit. If there are no further questions, the government will rest on its submission. Thank you very much. We'll reserve decision. Mr. Singer did not reserve any time. But, I'll give you a minute if you think there's something that you've heard that we should hear from you. Judge, just briefly, with regard to a compromise verdict, the whole notion of a compromise verdict is that it is inconsistent, is that the jury has gone off on a frolic of their own, if you will, that's not consistent with the evidence. And, to say, to try and attribute a rationale. Was it correct that Mr. Hernandez testified that he didn't mean to shoot anybody, that he really meant to shoot at property? Did he testify? He did, in fact, testify that he didn't mean to shoot anybody, yes. So, that does not provide a distinction for attempted murder or assault. That would provide a distinction if he was acquitted completely. But, it doesn't provide a distinction between those two counts that he was convicted of, or one conviction, one acquittal, with regard to Mr. Williams. The fact that it may well have been, that it could have been a compromise verdict. We're looking for rationality where there may not have been any. And, if we can't, I mean, we can always sort out in our own minds what we believe the basis of the jury's verdict was, but without knowing that, how do we then go forward? That's our concern. Were you trial counsel? Yes, I was, Judge. So, it's clear that you didn't object to the verdict form. No, Judge, neither side did, because, as I said at the very beginning, this was clearly understood by all involved that this was an all or nothing case. Thank you very much. We'll reserve the decision.